UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MESSIAH MISSIONARY BAPTIST CHURCH** | : | CIVIL ACTION NO: _____ |
| **VERSUS** | : | |
| **SERVICEMASTER RESIDENTIAL/ COMMERCIAL SERVICES LIMITED PARTNERSHIP; SERVICEMASTER RESTORATION BY HOWARD; and** | : | JUDGE _____ |
| **RECOVERY SOLUTIONS GROUP, LLC:** | | MAGISTRATE JUDGE _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT AND RELATED RELIEF**

NOW INTO COURT, through undersigned counsel, comes MESSIAH MISSIONARY BAPTIST CHURCH, who, pursuant to Rule 57 of the Federal Rules of Civil Procedure, Title 28 U.S.C. § 2201, et seq. and other applicable authorities, files this Complaint for Declaratory Judgment and Related Relief, and respectfully represents as follows:

**THE PARTIES**

1.

Plaintiff is MESSIAH MISSIONARY BAPTIST CHURCH, a Louisiana nonprofit corporation, located and doing business in Calcasieu Parish, Louisiana [hereinafter referred to as the "Church"].

2.

Made Defendants herein are:

A. SERVICEMASTER RESIDENTIAL/COMMERCIAL SERVICES LIMITED PARTNERSHIP, domiciled in the State of Delaware, with a principal business office located at 150 Peabody Place, Memphis, Tennessee 38103, whose registered agent in Louisiana is CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, Louisiana 70816 [hereinafter simply "SM-Franchisor"];

B. SERVICEMASTER RESTORATION BY HOWARD, believed to be domiciled at 905 Second Avenue SW, City of Cullman, County of Cullman, Alabama 35055 [hereinafter simply "SMR-Howard"]. Based on a review of the records of the Alabama Secretary of State's office, it is unclear as to what the nature of the SMR-Howard business entity is, that is, whether it is an LLC or some other form of legal entity or simply some individual d/b/a SMR-Howard; and

C. RECOVERY SOLUTIONS GROUP LLC, a limited liability company domiciled in the State of Delaware, authorized to do and doing business in the State of Louisiana, whose registered agent for service of process is Robert Sowers, 1008 Mattlind Way, Milford, Delaware 19963 [hereinafter simply "RSG"].

## JURISDICTION AND VENUE

3.

A. This Court has subject matter jurisdiction over the claims asserted in this matter based on diversity of citizenship as set forth in 28 U.S.C.A. § 1332. Complete diversity exists because the Plaintiff and the two Defendants to the claims asserted herein share no common state of incorporation or principal place of business and the Church's claims in this matter exceed $75,000.

B. On information and belief, to the extent the actual corporate or individual member owners of those Defendants who are LLC's or LLP's may be determinative as to confirming

complete diversity of citizenship, there is no information readily available to the Church to contradict the representations made in ¶3.A.

4.

Venue is proper under 28 U.S.C.A. § 1391 as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

5.

On or about September 13, 2020, Defendant SMR-Howard submitted a proposed Authorization for Repairs and Payment to a named representative of the Church, namely, Samuel M. Booker [a true copy of which is attached hereto and made a part hereof as Doc. 1-2].

6.

Part of the information included on Doc. 1-2 was handwritten into pertinent blanks as of the date Mr. Booker signed the document, that is, as indicated, September 13, 2020.

7.

Doc. 1-2 was prepared on a form that appears to have been created by Defendant SM-Franchisor, designated as SMC-003-111714, as noted on the bottom left of the first page of said document. To the best of the Church's information knowledge and belief, SM-Franchisor provided that form in suggesting how its franchisee, SMR-Howard should document the extent to which any work it proceeded to perform for a customer like the Church was actually legally authorized by the customer.

8.

In completing the subject form, the business(es) offering to provide the subject services were designated several different ways, including: "ServiceMaster"; "ServiceMaster Restore";

"ServiceMaster Recovery Services"; "ServiceMaster Clean Emergency Mitigation Referral Program"; and "ServiceMaster Clean". Unless specifically indicated otherwise herein below, all references to Defendants SM-Franchisor and/or SMR-Howard should be understood to refer to both said Defendants, collectively.

9.

The named representative for one or more of those "ServiceMaster" businesses was not printed, but only signed in a way that is nearly illegible, but appears to be "Alex Howard", when viewed in context with Doc. 1-3, referenced below.

10.

Apparently, someone representing one or more of the above named businesses added additional information to the subject Authorization form as of October 9, 2020 or sometime thereafter, but the revised form was not submitted to any Church representative for any subsequent signatures, at any time after September 13, 2020.

11.

On information and belief, Defendant SMR-Howard, submitted a 122 page itemized estimate and/or invoice describing work to be done, or being done or to be done, between September 20 and December 3, 2020 [a true copy of which is submitted as Doc. 1-3.  Doc. 1-3 was apparently submitted to the Church's insurer, Church Mutual Insurance Company [hereinafter simply "CMIC"], in connection with coverage provided by its Policy No. 0338853-02-089411 under Claim ##1423129 and/or 1426573.

12.

The total amount for the services described in Doc. 1-3 were $1,515,300.68.

13.

At all pertinent times, the corporate records of the Church were on file in the office of the Louisiana Secretary of State ["LA-SOS"] and available for review by Defendants, including those items submitted *in globo* as Doc. 1-4.

14.

Within the Church's Articles of Incorporated dated October 23, 1992, included within Doc. 1-4:

A. Article VI on capital says that the Church is a non-profit corporation: "Under no circumstances shall any of the net earnings or assets of the corporation inure or be distributed to the benefit of its members, directors, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered.."

B. Article IX on "Action of Membership": "In any action involving….transferring of corporate assets…shall require a two-thirds (2/3) vote of the voting membership of record."

C. Article X on "Powers of Directors": the number is to be not less than 3 nor greater than 7.  There is no statement as to the scope of their powers.  A quorum is required for all Board meetings.

D. Article XI on "Members' Consent":  any meetings are called by the Board of Directors.  A meeting is required to provide an affirmative vote of the membership as required to authorize or constitute corporate action.

E. Article XII on "Annual Meeting":  to be held on the last Friday in the month of October.  Notice of the annual meeting is to be mailed to all members at least 10 days before the meeting.

F. Article XIII on Board of Directors:  Mr. Booker was not among the original 5 named Directors.

15.

Also included within Doc. 1-4 is the Church's January 24, 2020 annual report signed by Treasurer Shirley Cleveland, which includes a listing of Samuel Booker as one individual

"Director", under its list of Directors.  However, also within the same documents is an annual report for the period ending October 23, 2019.  On the last page of that report, there is no indication that Mr. Booker ever accepted his appointment with a notarized signature.

16.

Based upon the readily available public LA-SOS records of the Church's corporate documents included in Doc. 1-4, the Church maintains that none of the Defendants has ever had any reasonable basis to conclude that Mr. Booker had actual, implied or apparent corporate authority sufficient to bind the Church to any contract imposing a legal obligation on the Church to pay any of the Defendants any sums of money ranging from as little as $10,000 to as much as $1.5 million or more, for any one or all of the following list of examples:

A.   As noted in ¶14.A above, any such authority would be dependent on as assessment of proposed billing of such work to be "reasonable compensation for services rendered".

B.   Based on ¶14.B above, if the Church was being asked to authorize a contract that might require the payment of as much as either +$400,000 or more than $1.0 million for proposed work, any such contract would "require a two-thirds (2/3) of the voting membership of record".

C.   Even assuming for the sake of argument that the Church's Board of Directors might have the authority, under extraordinary circumstances, to approve a contract committing the Church to pay such large sums, based on the provisions cited in ¶14.C above, there would have to be a Board meeting with a quorum of at least three Directors participating, to pass a resolution to approve such a contract.

    D.    Based on the provisions cited in ¶14.D above, the Church membership could not approve such a contract without a meeting being called by the Board of Directors.

    E.    Based on the provisions cited in ¶14.E above, normally an annual meeting of the membership occurs on the last Friday in October, after proper timely notice to the membership.  The subject of approval of the alleged contract at issue could have been addressed, if Defendants SM-Franchisor and/or SMR-Howard, had asked the Church to put it on the agenda for an October 30, 2021 annual meeting.

Neither Defendant SM-Franchisor nor Defendant SMR-Howard took any action to address any valid corporate approval of the proposed contract by any one of the means described in this paragraph.

17.

On information and belief, the Church maintains that there are no written records confirming any effort by either Defendant to reasonably investigate or inquire as to the extent to which, if any, Mr. Booker did or did not have the requisite authority to bind the Church to any of the obligations at issue in this Complaint.

18.

In addition or in the alternative, there are several additional grounds on which the alleged "Authorization for Repairs and Payment" [Doc. 1-2] is not an enforceable contract, under Louisiana law.  Those deficiencies include, without limitation, the fact that the subject "Authorization":

    A. Purports to include terms that were not included in the original form signed by one representative of the Church, subject to the lack of authority explained above. Examples are the reference to an October 9, 2020 Date of Loss and a second claim

number related to that subsequent Date of Loss, although the signature from the Church representative was obtained on September 13, 2020.

B. Includes a suspensive condition, requiring that the Church's insurer approve a detailed scope and estimate.  To the best of the Church's information, knowledge and belief, Defendants never obtained such an approval and, in any event, have not provided evidence to the Church that said condition was ever fulfilled.  Accordingly, the alleged contract may not be enforced, pursuant to La. C.C. Art. 1767;

C. Contains an unclear description of the scope of the services being provided, for example, the extent to which the allegedly provided services for "emergency repairs", there was an error as to the principal cause of the alleged contract. Pursuant to La. C.C. Art. 1949.

D. In essence, was purportedly a contract for the sale of some services to be provided by Defendants.  However, the alleged contract did not contain a certain or ascertainable price, an essential element for the alleged contract to be enforceable, pursuant to La. C.C. Arts. 2464 and 2474.

19.

In connection with the subject estimate or invoice submitted by one or both of the ServiceMaster Defendants to the Church's insurer, CMIC, at some point in time between December 3, 2020 and February of 2021, CMIC commissioned an Advisory Audit from "codeblue"/Madsky of the estimate or invoices submitted as Doc. 1-3 [a true copy of the Audit is submitted as Doc. 1-5].  This four page report of the Audit was prepared by Ed Jones, Vice President of Education and Operational Excellence, Master Water Restorer, IICRC Approved WRT/ASD Instructor, Water Loss Specialist #170.

20.

As reflected in the subject Audit designated as Doc. 1-5, the auditor evaluated the original estimate or invoice total amount of $1,515,300.68, and rejected a total of $1,054,493.26, leaving a total recommended payment of $460,807.42, as reflected on p. 4 of Doc. 1-5.

21.

The subject Audit included without limitation these major criticisms of the subject estimate or invoices for the services purportedly rendered by SMR-Howard:

    A.    Only 10 days of air movers and de-humidifiers were needed, not 24 days.

    B.    Charged for 4 weeks of 300-400 KW generator when 2 weeks should have been long enough.

    C.    Charged for one month use of scissor lift; reduced to 2 weeks.

    D.    Air filtration devices needed for 10 not 24 days; unnecessary replacement of filters.

    E.    Mobilization charges for out-of-state contractor inappropriate.

22.

In addition to commissioning the Audit described above, CMIC also commissioned a Water and Mold Damage Assessment and Limited Asbestos Survey of the Church, from J. S. Held [hereinafter simply "JSH"], under JSH Project No. 20120447. JSH issued a January 28, 2021 report [which is submitted as Doc. 1-6].

23.

The JSH Report included the following statements as to asbestos issues:

    A.    "**6.5    Asbestos Bulk Sampling Conclusions**

              J. S. Held performed an asbestos assessment on December 28 and 29, 2020 by accredited inspectors. Based on the assessment, several components were identified to contain asbestos or are assumed to contain asbestos, as

described above. Conclusions specific to categories of asbestos are as follows:

- Friable ACM considered as regulated ACM (RACM) within the property includes drywall wall and ceiling systems located in all four buildings.

- ACM that is considered to be Category 1 nonfriable and non-regulated ACM includes floor mastic, vinyl floor tile and associated mastic located in Building 1 and Building 4.

- Materials that contain trace amounts of asbestos ($\leq 1\%$) include carpet glue/mastic located in Building 3; drywall debris located on the exterior grounds; and window glazing located on the exterior of the building."

[Doc. 1-6 @ p. 9]

B. **"6.6 Asbestos Bulk Sampling Recommendations**

J.S. Held provides the following recommendations regarding the asbestos bulk sample results:

- If additional suspect materials that were not accessible during this inspection are found during or prior to remediation or demolition, additional sampling is recommended to be performed by a LDEQ licensed Asbestos Inspector.

- J. S. Held recommends that materials unable to be sampled due to inaccessibility should be sampled to confirm whether asbestos is present or not within those materials.

- All vertical and horizontal surfaces within all four buildings of the property to be cleaned with HEPA vacuums by appropriately licensed firms and workers. In addition, all remaining debris is recommended to be disposed as RACM.

- Remaining friable ACM to be abated by appropriately licensed firms and workers.

- Category 1 ACM that is in poor condition to be abated by appropriately licensed firms and workers.

- All abatement, removal or disturbance of ACM and materials containing asbestos ($\leq 1\%$) shall be performed in accordance with

> prevailing local, state and federal asbestos regulations to include but not limit LDEQ, EPA and OSHA.
>
> - J. S. Held can provide specifications for asbestos abatement by a LDEQ accredited Asbestos Project Designer upon request.
>
> - Where possible, as-built drawings should be utilized to identify asbestos throughout the building.
>
> - J. S. Held recommends that if ACM is left in place, an Operations and Maintenance plan to be developed by an LDEQ accredited Asbestos Management Planner."
>
> [Doc. 1-6 @ pp. 9-10]

C.  "Regarding asbestos, J. S. Held recommends all vertical and horizontal surfaces within all four buildings of the property to be cleaned with HEPA vacuums by appropriately licensed firms and workers, and all remaining debris to be disposed as RACM. J. S. Held also recommends remaining friable ACM and Category 1 ACM that is in poor condition to be abated by appropriately licensed firms and workers. Furthermore, all abatement, removal or disturbance of ACM and materials containing asbestos ($\leq 1\%$) is recommended to be performed in accordance with prevailing local, state and federal asbestos regulations to include but not limit LDEQ, EPA and OSHA." [Doc. 1-6 @ pp. 11]

24.

The JSH report and recommendations cast further doubt on whether the "recommended net payment" to SMR-Howard in the subject CodeBlue Audit, that is, the sum of $460,807.42, should be substantially offset by the damages and unresolved issues left by the manner in which SMR-Howard conducted that work, creating expenses for the Church that can and should have been avoided.

25.

Apparently, Defendant SM-Franchisor and/or Defendant SMR-Howard have engaged the services of RSG in an effort to collect as much as $1.5 million or more with respect to the services allegedly provided to the Church.

26.

On information and belief, RSG is a debt collection agency specializing in fire and water mitigation services debt recovery.

27.

For example, based on correspondence made available to the Church, RSG has repeatedly demanded payment for services allegedly provided by Defendant SMR-Howard, for services allegedly performed in connection with hurricane damage to the First United Pentecostal Church of Deridder.

28.

In connection with that example, the same insurer for the Church in this lawsuit, namely, CMIC, has complained of receiving repeated demands for payment from RSG. In response to those demands, counsel for CMIC wrote a December 17, 2020 letter taking the position that RSG's demands for payment from CMIC related to "unauthorized, unsubstantiated and excessive mitigation services" performed by the same "ServiceMaster by Howard" that is named as Defendant SMR-Howard, herein [a true copy of that letter is submitted as Doc. 1-7].

29.

Compared to that similar harassment directed toward CMIC regarding the SMR-Howard alleged work for First United Pentecostal Church of Deridder, the invoiced services that CMIC has maintained were unauthorized, unsubstantiated and excessive were, in total, for the much lower sum of $219,260.02, compared to the plus $1.5 million invoices for alleged services at issue in this lawsuit.

30.

In addition, with respect to the unauthorized, unsubstantiated and excessive mitigation service invoices from Defendant SMR-Howard at issue in the First United Pentecostal Church matter, it is unknown:

    A.    whether CMIC commissioned an audit establishing that 70% or more of the alleged services at issue were excessive, unsubstantiated and/or unauthorized, as the CodeBlue Audit has indicated as to the matters in dispute under this Complaint.

    B.    whether the Defendant SMR-Howard work involved improper handling of asbestos and asbestos abatement issues, as documented by the JSH report secured on the matters at issue in this lawsuit.

31.

Additional examples of Defendants' negligent work included the ServiceMaster people putting church pews that were in good condition after Hurricane Laura outside where they were left in the rain and allowed to further deteriorate.

32.

On information and belief, none of the Defendants herein has demanded payment from CMIC for any of the disputed estimates, invoices or billing at issue.  In any event, on information and belief, CMIC has not seen fit to pay any of those sums at issue, to any of the Defendants.

**SPECIFICATION OF CLAIMS AGAINST THE DEFENDANTS**

**COUNT I**

The allegations of Paragraphs 1-32 are incorporated herein, *in extenso*.

33.

The Church is entitled to a declaratory judgment finding that it has no liability to any of the Defendants regarding most if not all of the plus $1.5 million at issue, based on any one or all of the following grounds.

A. The alleged contractual obligations that one or more of the Defendants are attempting to collect from the Church were never approved by anyone with actual, implied or apparent authority necessary to provide such a valid corporate approval of same.

B. Even if any part of the work had been properly approved by any representative(s) of the Church with actual, implied or apparent authority necessary to provide such a valid approval of same, all or most all of the sums at issue are so unsubstantiated and/or excessive charges for the alleged mitigation services at issue that they are not legal obligations of the Church, for the reasons noted in the CodeBlue Audit [Doc. 1-5].

## COUNT II

The allegations of Paragraphs 1-33 are incorporated herein, *in extenso*.

34.

Defendants SM-Franchisor and SMR-Howard acted negligently in their handling of the services at issue, creating significant expenses and liabilities for the Church that could have otherwise been avoided, including without limitation their handling of asbestos issues during the subject mitigation work, based on all records associated with the work, including the JSH Report submitted as Doc. 1-6.

## COUNT III

The allegations of Paragraphs 1-34 are incorporated herein, *in extenso*.

35.

In violation of the Louisiana Unfair Trade Practices Act ["LUTPA"], under La. R.S. 51:1401 et seq., all the Defendants, both individually and collectively, have knowingly engaged in and are attempting to continue to engage in ongoing unfair and deceptive methods, tactics, acts and practices against the Church, in order to:

    A.    Ignore the Defendants' failure to seek valid Church corporate approval of a contract or contracts covering the charges at issue;

    B.    Ignore the Defendants' failure to first secure the required approval from the Church's insurer of the scope a  proposed estimate of total cost of the proposed services;

    C.    Create undue pressure on the Church to pay some significant portion of the disputed invoices, despite the fact that those invoices reflect charges associated with unsubstantiated, excessive and/or unauthorized mitigation services;  and/or

    C.    Create duress and exert unwarranted pressure on the Church and/or its insurer in order to gain and unjustifiable advantage in the subject collection efforts,

despite the fact that one or all of the Defendants knew or should have known of the substantial grounds to dispute the validity of any authorization from the Church for the substantial charges at issue, and/or the reasonableness of most if not all the charges at issue, with or without the CodeBlue Audit [Doc. 1-5] and/or the JSH Report [Doc. 1-6], and yet they have continued to suggest that the charges were legally authorized, adequately substantiated by contemporaneous records, reasonable and collectible, forcing the Church and/or CMIC to find all the inaccuracies and unreasonable aspects of the alleged charges, at the substantial expense involve in securing the information contained in Doc. 1-5 and 1-6.

36.

Over the last few months, Defendant RSG has been taking the lead in handling the debt collection efforts at issue.  On or about March 9, 2021, in a very detailed demand letter, incorporating the pertinent documents, by reference, counsel for the Church put Defendants on notice that, unless they ceased their collection efforts or provided better evidence of any alleged authorized contract for the invoices at issue, the Church would institute these proceedings without further delay.  The Church set an initial deadline for a final resolution without the filing of this lawsuit, for March 19.  On March 18, RSG asked to extend that deadline by one week, which the Church allowed.  Since then, the extended deadline of March 26 has passed.  Defendants have not timely come forward with any proposals.  The Church is now filing this Complaint.

WHEREFORE, premises considered Plaintiff, MESSIAH MISSIONARY BAPTIST CHURCH, PRAYS that its Complaint for Declaratory Judgment and Related Relief be deemed good and sufficient, and that, after due proceedings be had, the Court enter judgment in favor of Plaintiff, and against Defendants, on the claims asserted herein.

PRAYS FURTHER, for all general and equitable relief available under the circumstances.

Respectfully submitted,

STOCKWELL, SIEVERT, VICCELLIO,
 CLEMENTS & SHADDOCK, L.L.P.


BY:   s/William B. Monk
       WILLIAM B. MONK (#09551)
       STEPHEN D. POLITO (#32638)
       127 W. BROAD ST.
       CHASE BANK BLDG., 4TH FL.
       LAKE CHARLES, LA  70601
       PHONE: (337) 436-9491
       FAX: (337) 493-7210

BAGGETT, McCALL, BURGESS,
 WATSON & GAUGHAN


BY:   s/Wells T. Watson
      WELLS T. WATSON (#20406)
      3006 COUNTRY CLUB RD.,
        SUITE 100
      LAKE CHARLES, LA  70605
      PHONE: (337) 478-8888
      FAXS: (337) 478-8946

*Attorneys for Messiah Missionary Baptist Church*